# <u>EXHIBIT 3</u>

## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SYNERGEN INC., a Michigan
Corporation,

       Plaintiff/Counter-Defendant,       Case No. 2:16-cv-11842

vs.

       Hon. Matthew F. Leitman
       Magistrate: R. Steven Whalen

FCA US LLC (f/k/a Chrysler Group,
LLC), a Delaware limited liability
company,

       Defendant/Counter-Plaintiff/       **FCA US, LLC'S RESPONSE BRIEF**
       Third-Party Plaintiff,       **IN OPPOSITION TO MOTION TO**
       **QUASH SUBPOENAS TO THE**
vs.       **JVIS ENTITIES**

Uusi LLC, d/b/a Nartron Corporation, a
Michigan limited liability company,

       Third-Party Defendant.

---

Kenneth B. Morgan (P34492)
CAMPBELL MORGAN, P.C.
*Attorneys for Synergen*
180 High Oak Drive, Suite 202
Bloomfield Hills, MI 48304
(248) 594-6341
kbmorgan@camorlaw.com

Raechel Badalamenti (P64361)
Robert J. Morris (P75864)
Salvatore DeBlasi (P77616)
Attorneys for Plaintiff and Third-Party
Defendant
KIRK HUTH LANGE & BADALAMENTI, PLC
19500 Hall Road, Suite 100
Clinton Township, MI 48038
(586) 412-4900
rbadalamenti@khlblaw.com

James P. Feeney (P13335)
Laura C. Baucus (P56932)
Jennifer Boueri Chilson (P71176)
Elisa J. Lintemuth (P74498)
*Attorneys for FCA US LLC*
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
(248) 203-0700
jfeeney@dykema.com
baucus@dykema.com
jbouerichilson@dykema.com
elintemuth@dykema.com

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•39577 WOODWARD AVENUE, SUITE 300•BLOOMFIELD HILLS, MICHIGAN 48304

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF ISSUES PRESENTED................................................. iv

CONTROLLING AUTHORITY FOR RELIEF SOUGHT ...................... v

I.      INTRODUCTION ................................................................... 1

II.     BACKGROUND FACTS.......................................................... 3

   A.  Federal Case Background (This Case).................................... 3

   B.  The Damages Sought By Synergen. ...................................... 3

   C.  The Macomb County JVIS Lawsuit (WK Program) .............. 4

   D.  FCA Issues a Subpoena to the JVIS Entities ......................... 7

   E.  Nartron Admissions that the Two Cases Have Certain Related Issues and Timeline Of Events Leading To Filing Of Motion ..................................... 8

III.    STANDARD OF REVIEW .................................................... 9

IV.    ARGUMENT ........................................................................ 11

   A.  Synergen and Nartron Lack Standing to Challenge the Subpoena. ........... 11

      1.  *Synergen and Nartron Lack Standing to Object to the Subpoena on the Basis of Relevance and Overbreadth.* ......................................... 13

      2.  *Synergen and Nartron Do Not Have a Protected Interest in the Tooling Documents Under the Circumstances Here.* .................................. 14

   B.  The Information Sought Via the Subpoenas Is Highly Relevant to Establishing the Basis for Synergen's Alleged Damages Claim Against FCA US......................................................................................... 17

   C.  Additional Subpoenas to the JVIS Entities May be Necessary. ............... 18

V.    CONCLUSION..................................................................... 19

i

## TABLE OF AUTHORITIES

Page(s)

CASES

*Coleman v. Am. Red Cross,*
  23 F.3d 1091 (6th Cir. 1994) ....................................................................9

*Cruz v. Fulton,*
  2016 U.S. Dist. LEXIS 133246 (E.D. La. Sept. 28, 2016)................................13

*JZ Buckingham Invs. LLC v. United States,*
  78 Fed. Cl. 15 (2007) ......................................................................10

*Maday v. Pub. Libraries,*
  480 F.3d 815 (6th Cir. 2007) .........................................................16

*Malibu Media, LLC v. Doe,*
  2015 U.S. Dist. LEXIS 53784 (E.D. Mich. Apr. 24, 2015); Fed. R.
  Civ.....................................................................................9, 10

*Mann v. Univ. of Cincinnati,*
  1997 U.S. App. LEXIS 12482 (6th Cir. 1997) (per curiam) ............................10

*McNaughton-McKay Elec. Co. v. Linamar Corp.,*
  No. 09-cv-11165, 2010 U.S. Dist. LEXIS 59275 (E.D. Mich. June
  15, 2010) ...........................................................................12, 16

*Nucorp, Inc. v. Does 1-24,*
  No. 2:11-cv-15222, 2012 U.S. Dist. LEXIS 187547 (E.D. Mich.
  Oct. 18, 2012) ...............................................................12, 13, 14

*Pogue v. Northwestern Mut. Life Ins. Co.,*
  2016 U.S. Dist. LEXIS 70987 (W.D. Ky. May 31, 2016) ................................15

*Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus.,*
  No. 1:05-mc-107, 2005 U.S. Dist. LEXIS 30594 (W.D. Mich. Aug.
  24, 2005) .........................................................................14

*Underwood v. Riverview of Ann Arbor,*
  2008 U.S. Dist. LEXIS 107323 (E.D. Mich. Dec. 15, 2008) ............................11

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE, SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

*United States v. Wells*,
   2006 U.S. Dist. LEXIS 83124 (E.D. Mich. Nov. 3, 2006) .................................10

*White Mule Co. v. ATC Leasing Co. LLC*,
   No. 3:07CV00057, 2008 U.S. Dist. LEXIS 51344 (N.D. Ohio June
   25, 2008) ...............................................................................................................13

*Zoobuh, Inc. v. Rainbow Int'l Corp.*,
   2015 U.S. Dist. LEXIS 59349 (D. Utah May 5, 2015) ....................................13

RULES

Fed. R. Civ. P. 26(b)(1) .................................................................................................9

Fed. R. Civ. P. 45(d)(3)(B) ........................................................................................10

Fed. R. Civ. P. 45(d)(3)(C) ........................................................................................10

Federal Rule of Civil Procedure 11 ...........................................................................19

Federal Rule of Civil Procedure 45(d)(3) ....................................................................9

Local Rule 7.1 ..............................................................................................................19

Local Rules 7.1 and 11.1 .............................................................................................19

Rule 26(c) .....................................................................................................................13

Rule 45 .........................................................................................................................12

Rule 45(c) ......................................................................................................................9

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE, SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

## STATEMENT OF ISSUES PRESENTED

(1) Whether Synergen and Nartron's motion to quash the subpoena issued by FCA US to the JVIS Entities should be denied where:

(a)     Synergen and Nartron lack standing to object to the subpoena, and the JVIS Entities have not objected to the subpoena;

(b)     Synergen has no relationship to the information being sought by FCA US in the subpoena, providing an additional reasons why it has no standing to object to the subpoena;

(c)     Synergen and Nartron failed to meet their burden of proof and failed to provide this Court any evidence proving that the information sought by FCA US is confidential and proprietary, including providing no affidavit or other evidence, but only attorney argument, which is not sufficient;

(d)     Whether the information sought by FCA US in the subpoena issued to the JVIS Entities is relevant to FCA US's efforts to defend against the damages being sought by Synergen in this pending federal lawsuit, including being Nartron is not entitled to double dip on its damages in two separate lawsuits, and is not overbroad.

## CONTROLLING AUTHORITY FOR RELIEF SOUGHT

Fed. R. Civ. P. 26(b)(1).

Fed. R. Civ. P. 45.

*Mann v. Univ. of Cincinnati*, 1997 U.S. App. LEXIS 12482, at *14 (6th Cir. 1997) (per curiam).

*Nucorp, Inc. v. Does 1-24*, No. 2:11-cv-15222, 2012 U.S. Dist. LEXIS 187547 (E.D. Mich. Oct. 18, 2012).

*Underwood v. Riverview of Ann Arbor*, 2008 U.S. Dist. LEXIS 107323, at *4 (E.D. Mich. Dec. 15, 2008).

v

## FCA US, LLC'S RESPONSE IN OPPOSITION TO MOTION TO QUASH

### I.   INTRODUCTION

First, UUSI LLC d/b/a Nartron Corporation's ("Nartron") and Synergen Inc. ("Synergen") lack standing, as a matter of law, to object to FCA US LLC's ("FCA US") third party subpoena. Their motion should be denied on that basis alone. Indeed—Synergen is nothing more than a mere assignee of a cause of action from Nartron, and could not possibly have any protected right in the subpoenaed information.

Second, Synergen and Nartron have the burden of proof here. They have attached no evidence, including no affidavits, to substantiate their claim that the requested information is confidential or proprietary.

Third, Nartron's *modus operandi* is to file lawsuits against customers when the business relationship is terminated, like it did against FCA US here. Par for the course, Nartron has been embroiled in another lawsuit pending in Macomb County Circuit Court with other former customers - JVIS-USA, LLC and JVIS Manufacturing LLC (the "JVIS Entities"). Nartron is correct - the JVIS lawsuit relates to another part (also called the "WK" program). But what Nartron fails to mention is that Nartron made its WK parts for JVIS at the *same* factory in Reed City, Michigan (the "Reed City Facility") where it manufactured the fuel pump control modules ("FPCM") for FCA US at issue in this federal lawsuit (also called the "DS" program).

1

This production facility overlap has been a hotbed of contention in the JVIS lawsuit. This overlap resulted in numerous motions to compel filed by JVIS seeking to compel Nartron to produce documents and provide testimony related to the DS program to support Nartron's termination damages claim—precisely because the WK parts and the DS parts (the FPCM) were made at the same Reed City Facility. These documents and testimony included information related to the profitably of the Reed City Facility generally, the FPCM tooling and equipment, the FPCM material and equipment obsolesce claims made by Nartron, and other FPCM information. Nartron likewise filed motions for protective orders seeking to hide such information. Nartron lost those motions. The Macomb County Circuit Court found the DS information relevant in the WK lawsuit and had to order Nartron to produce the information three times. (*See* **Exs. B, C, and D**). Nartron is now attempting to re-litigate this issue, seeking to hide relevant information and obstruct FCA US's ability to defend this lawsuit. The Macomb County Circuit Court did not let Nartron get away with these improper discovery tactics and neither should this Court.

Essentially, what is at issue here is double-dipping by Nartron. Nartron is not permitted to seek the same termination damages from both FCA US here and from the JVIS Entities in the Macomb County lawsuit. That is why the Macomb County Circuit Court found the DS information relevant in the JVIS-WK lawsuit,

and that is why this Court should find the requested JVIS-WK information relevant here. Indeed, Nartron even developed the language for one of the Macomb County orders requiring the DS information to be produced in that case, thereby acknowledging that the DS information was fair game in the JVIS case because of the Reed City Facility overlap. (*See* **Ex. B**, 10/13/15 Order). Synergen and Nartron's Motion to Quash here is simply a waste of everyone's time and should be immediately denied.

## II.   BACKGROUND FACTS

### A.   Federal Case Background (This Case).

Chrysler Group LLC ("Chrysler") and Nartron entered into a contract in which Chrysler offered to pay Nartron for the design and manufacture of FPCM. Chrysler canceled and terminated the contract[1] for, among other things, Nartron's failure to provide information required by the contract, supplying defective parts, and its continuous demand for payments outside the terms of the contract.

### B.   The Damages Sought By Synergen.

On or about March 27, 2015, Synergen, as alleged assignee of Nartron, filed this breach of contract, promissory estoppel, and unjust enrichment lawsuit. As

---

[1] As described in detail in FCA US's Motion to Transfer Venue (W.D. Dkt. 45), the contract between FCA US (f/k/a Chrysler) and Nartron includes (i) the Chrysler-issued Parts Purchase Order, any Chrysler-issued Purchase Order amendments / revisions, any Chrysler-issued change notices related to the Parts, and Chrysler-issued specifications related to the Parts and Specifications; (ii) Terms and Conditions; (iii) the Tooling Purchase Orders; and (iv) the Engineering Purchase Order.

part of its damage claim, Synergen is seeking damages purportedly caused by the termination of the FPCM business at the Reed City Facility, including for alleged unpaid tooling, obsolesce (*i.e*, unused raw materials), lost profits, among other damages. *See* **Ex. A**, Plaintiff's Damages Calculation, and specifically Lines 5, 6, 8, 9 of Ex. A seeking over $700,000 in damages related to tooling.

C.     **The Macomb County JVIS Lawsuit (WK Program)**

In the lawsuit between the JVIS Entities and Nartron, Case No. 13-2742-CB, the Macomb County Circuit issued three orders (that FCA US could locate –there could be more) compelling Nartron to produce information related to the DS program / the FPCM termination claims which are at issue in this pending federal lawsuit.

**The October 13, 2015, Order (Exhibit B)**.    On October 13, 2015, the Macomb court ruled that Nartron had to produce information related to the DS program (FPCM) as the information impacted the damages being claimed in the JVIS lawsuit (i.e., the double-dipping issue).    In this Order, Nartron *agreed to* language providing that the scope of corporate representative testimony for the JVIS lawsuit would include DS (FPCM) information.    The topics *agreed upon* by Nartron included:

> 1) [Nartron's] use of equipment and tooling it used to produce printed circuit board assemblies for JVIS or any other programs including but not limited to the Chryslers DS program.  This includes

identification of other customers and jobs for which Nartron was using the tooling and equipment. (handwritten, second page of order)

2) a) identification of all contracts and business expectancies, including their terms, between [Nartron] and Chrysler related to the DS and any other program or expectancy that [Nartron] claims that any of the parties interfered with, .... *See* **Ex. B.**, 10/13/15 Order. (handwritten, second page of order)

4) All instances in which Chrysler identified alleged failures of Nartron to produce parts to Chrysler's volume, timing, quality __??__ expectations pursuant to Chrysler's contract with Nartron relating to Nartron's involvement in the DS program. *See* **Ex. B**, 10/13/15 Order (handwritten, last page of order).

**The March 4, 2016, Order (Exhibit C)**. On March 4, 2016, the Macomb court discussed in detail the overlap between the WK program and the DS program (FPCM) as it relates to damages being claimed and the right of the JVIS Entities to discovery to determine and confirm whether Nartron is seeking to double dip on its tooling, equipment and obsolescence and other damages claims.

> With respect to interrogatory 14, the parties dispute (1) whether Nartron is required to identify the equipment by name and serial number that it submitted to Chrysler as part of its obsolescence claim on the fuel pump control program [*i.e.*, the DS program], and (2) whether Nartron is required to provide financial detail of that portion of its obsolescence claim that pertains to equipment, *i.e.* Nartron will disclose how much it paid for the claimed equipment and how much it is charging Chrysler for the equipment portion of its obsolescence claim.

> With regard to the first issue, the Court is convinced that identifying the equipment at issue by name and serial number is appropriate as the identification of the equipment at issue in Nartron's claim against Chrysler is relevant in this matter on the issue of what, if any, equipment Nartron has already been compensated for by Chrysler. Likewise, the Court is convinced that the cost of the equipment at

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 39577 WOODWARD AVENUE, SUITE 300 • BLOOMFIELD HILLS, MICHIGAN 48304

issue in connection with Nartron's claim against Chrysler is relevant and should be produced.

**Ex. C**, 3/4/16 Order, pp. 3-4.

The Macomb County Circuit Court also ruled that if Nartron submitted a project completion claim to Chrysler on the DS program (FPCM) that such information was relevant and needed to be produced. *Id.*, p. 4. The court further ruled the following information had to be produced because of the overlap.

> Nartron shall supplement its response to interrogatory no. 14 from Plaintiffs' and Futaba's sixth interrogatories to identify the equipment by name and serial number that it submitted to Chrysler as part of its obsolescence claim on the fuel pump control program a/k/a the Chrysler DS Program. Nartron shall also state whether and to what extent there is any overlap, *i.e.* whether there is any equipment in common, in the obsolescence claim Nartron asserted against Chrysler for the fuel pump control module (DS Program) and the obsolescence claim asserted in this case and, if so, identify in detail that overlap.

> Nartron shall also provide the financial detail of that portion of its obsolescence claim that pertains to equipment *i.e.* Nartron will disclose how much it paid for the claimed equipment and how much it is charging Chrysler for the equipment portion of its obsolescence claim.

> Finally, Nartron shall supplement its response to interrogatory no. 15 from Plaintiffs and Futaba's sixth interrogatories to state whether a 'project completion' claim has been asserted by Nartron against Chrysler regarding the fuel pump control module. If Nartron has requested 'project completion' damages from Chrysler, then Nartron shall provide Plaintiffs with a copy of that claim. Nartron must also identify whether there is any overlap in the project completion hours that Nartron seeks from Chrysler in the DS case and from Plaintiffs in this matter. If an overlap exists, Nartron must provide detail regarding the employees and hours that overlap.

*Id.* pp. 5-6.

6

**August 1, 2016, Order (Exhibit D)**.  On August 1, 2016, the Macomb court issued yet another order requiring Nartron to produce DS program (FPCM) information to the JVIS Entities, requiring that the following information be produced:

> 1. The operative document which assigns/transfers Nartron's right of action for DS Program damages to Synergyn, Inc.
> 2. All time records and other documents supporting Nartron's claim for project completion damages against Chrysler on the DS Program.
> 3. All quotes, purchase orders, and invoices which support Nartron's obsolescence claim against Chrysler on the Chrysler . . . on the DS Program.
> 4. All demand letters from Nartron/Synergyn to Chrysler requesting damages for obsolescence and project completion related to the DS Program.

**Ex. D.**, 8/1/16 Order.

### D.    FCA Issues a Subpoena to the JVIS Entities

FCA US issued its subpoena to the JVIS Entities on May 9, 2017.  The JVIS Entities have not objected to the subpoena.

In the Macomb case, the court ruled that Nartron had to provide to the JVIS Entities documents and information about the FPCM (the DS program) at issue in this federal case (*i.e.*, identifying tooling and equipment Nartron used to produce the FPCM for FCA US on the DS program, payments made by FCA US for DS tooling and equipment, demands for payment by Nartron for DS tooling and equipment, and termination damage claims related to DS tooling and equipment,

among other things).

In the subpoena at issue here, FCA US is seeking the flip side of the same coin, *i.e.,* FCA US is seeking the same type of tooling and equipment information from the JVIS Entities but related to the WK program (*i.e.*, identifying tooling and equipment Nartron used to produce the parts for JVIS on the WK program, payments made by JVIS to Nartron for WK tooling and equipment, demands for payment by Nartron for WK tooling and equipment, and termination damage claims related to WK tooling and equipment, among other things). That is the only way for FCA US to conduct discovery and stop any double dipping by Nartron.

### E. Nartron Admissions that the Two Cases Have Certain Related Issues and Timeline Of Events Leading To Filing Of Motion

In addition to the three orders issued by the Macomb court, even in this federal case Synergen and Nartron have admitted that the two cases overlap. The Macomb - JVIS case with the JVIS Entitites has since been referred to arbitration. On May 17, 2017, the arbitrators in the JVIS case entered an order—drafted by Nartron—in which Nartron admits that JVIS lawsuit and this FPCM lawsuit are "related." *See* Dkt. # 65, p. 8.

Also, in Synergen and Nartron's Emergency Motion to Partially Lift Confidentiality Designation [Dkt. # 65], they admit that documents produced by FCA US in this case are "particularly relevant" to the JVIS lawsuit. *See* Dkt. # 65, at ¶ 9.

Finally, during the May 19, 2017, conference call with this Court related to Synergen and Nartron's Motion for Expedited Consideration [Dkt. # 66] of their Emergency Motion to Partially Lift Confidentiality Designation [Dkt. # 65], counsel for Nartron admitted verbally that some of the issues in the JVIS lawsuit are interrelated with this DS (FPCM) case.

## III.   STANDARD OF REVIEW

Parties may obtain discovery regarding any unprivileged matter relevant to a claim or defense of any party. Fed. R. Civ. P. 26(b)(1).   Relevant discovery information need not be admissible at trial, but need only be reasonably calculated to lead to the discovery of admissible evidence. *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1097 (6th Cir. 1994) ("A court is not permitted to preclude the discovery of arguably relevant information solely because, if the information were introduced at trial, it would be 'speculative' at best.").

A motion to quash or modify a subpoena is governed by Federal Rule of Civil Procedure 45(d)(3).  First, a court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." *Malibu Media, LLC v. Doe*, 2015 U.S. Dist. LEXIS 53784, at*2-*7 (E.D. Mich. Apr. 24, 2015); Fed. R. Civ. P. 45(d)(3)(A).

9

Second, a court "may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." *Id.* (emphasis added); Fed. R. Civ. P. 45(d)(3)(B). Rather than modifying or quashing a subpoena that violates Rule 45(d)(3)(B), a court may "order appearance of production under specified conditions if the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(C).

*The party seeking to quash a subpoena bears a heavy burden of proof.* *United States v. Wells*, 2006 U.S. Dist. LEXIS 83124, at *2 (E.D. Mich. Nov. 3, 2006). When deciding whether to quash or modify a subpoena, the court must consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *JZ Buckingham Invs. LLC v. United States*, 78 Fed. Cl. 15, 10 (2007). As a general rule, <u>a party</u> has no standing to seek to quash a subpoena directed at a <u>non-party</u> unless the party-movant can demonstrate a claim of privilege or personal right. *Id.; see also Mann v. Univ. of Cincinnati*, 1997 U.S. App. LEXIS 12482, at *14 (6th Cir. 1997) (per

curiam); *Underwood v. Riverview of Ann Arbor*, 2008 U.S. Dist. LEXIS 107323, at *4 (E.D. Mich. Dec. 15, 2008).

## IV. ARGUMENT

Synergen and Nartron's motion to quash the subpoena to the JVIS Entities must be denied for at least the following reasons: (1) the JVIS Entities have not objected and Synergen and Nartron lack standing to seek to quash the subpoena because they cannot object to the subpoena on the basis of relevance and overbreadth, and have failed to demonstrate a privilege as to the information sought; and (2) even if they could assert a privilege, the documents must be produced because they are highly relevant to this lawsuit, specifically line items 5, 6, 8 and 9 of Exhibit A seeking over $700,000 in damages related to tooling, and FCA US needs this information to properly defend against Synergen's damages claims. FCA US needs to know if Nartron was compensated by the JVIS Entities for the same tooling at issue in this lawsuit, and confirm whether Nartron is double-dipping.

### A. Synergen and Nartron Lack Standing to Challenge the Subpoena.

The motion has been brought by Synergen and Nartron, however, as a threshold matter, they lack standing to challenge a subpoena to a third party. The JVIS Entities have not objected to the subpoenas. The general rule is that a party lacks standing to seek to quash a subpoena that is directed to a non-party absent "a claim of privilege or personal right." *Underwood*, 2008 U.S. Dist. LEXIS 107323,

11

at *3-4 (denying request to quash subpoena); *McNaughton-McKay Elec. Co. v. Linamar Corp.*, No. 09-cv-11165, 2010 U.S. Dist. LEXIS 59275, at * 4 (E.D. Mich. June 15, 2010) (denying a motion to quash and noting that "[i]n the absence of a claim of privilege, proprietary interest, or personal interest, a party has no standing to quash a subpoena directed at a non-party."); *see also Nucorp, Inc. v. Does 1-24*, No. 2:11-cv-15222, 2012 U.S. Dist. LEXIS 187547, at * 15-16 (E.D. Mich. Oct. 18, 2012) (explaining that "[u]nder the plain language of Rule 45, the law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty, and holding that "defendants lack standing to challenge the subpoenas on the grounds of relevance, undue burden, or privacy.").

Here, Synergen and Nartron seek to quash the subpoenas because of alleged lack of relevance and because it contains purported confidential proprietary information. All of these arguments fail as a matter of law because Synergen and Nartron lack standing to object to the subpoena on the basis of relevance and overbreadth, and they have not proven a protected right or privilege as to the documents sought in the subpoena. Further, a protective order exists in this case as well, which protects any information about which Synergen and Nartron could be concerned. Finally, Synergen and Nartron cannot hide double dipping on damages by claiming that documents are confidential and proprietary.

  *1. <u>Synergen and Nartron Lack Standing to Object to the Subpoena<br>   on the Basis of Relevance and Overbreadth.</u>*

  Because the subpoena was directed to the third-party JVIS Entities, Synergen and Nartron lack standing to object to the subpoena on the basis of relevance and overbreadth. *See, e.g., Nucorp, Inc.*, No. 2:11-cv-15222, 2012 U.S. Dist. LEXIS 187547, at * 15-16 ( "defendants lack standing to challenge the subpoenas on the grounds of relevance, undue burden, or privacy."); *Cruz v. Fulton*, 2016 U.S. Dist. LEXIS 133246, at*8-* 9 (E.D. La. Sept. 28, 2016) ("[T]he Court concludes Fulton does not have standing to challenge the subpoena on the basis of relevance and overbreadth. A motion to quash is intended to protect the party subpoenaed. Fulton is not the party subpoenaed."); *Zoobuh, Inc. v. Rainbow Int'l Corp.*, 2015 U.S. Dist. LEXIS 59349, at *6-7 (D. Utah May 5, 2015) (quotations omitted) ("'[E]ven where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden.' Similarly, a party lacks standing to challenge the subpoena on overly broad and relevance grounds.") As such, the Court must reject Synergen and Nartron's attempt to quash the subpoena to the JVIS Entities on the basis of relevance and overbreadth.[2]

---

[2] For Synergen and Nartron to have standing to object to the subpoena issued to the JVIS Entities, they would be required to file a motion for protective order under Rule 26(c), demonstrating good cause such as <u>to protect the JVIS Entities</u> from "annoyance, embarrassment, oppression, or undue burden or expense." *See, e.g., White Mule Co. v. ATC Leasing Co. LLC*, No. 3:07CV00057, 2008 U.S. Dist.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE, SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

2. <u>*Synergen and Nartron Do Not Have a Protected Interest in the Tooling Documents Under the Circumstances Here.*</u>

Synergen and Nartron lack standing to quash the subpoena because they (i) have not established a protected right or privilege as to tooling information and even if they did (ii) they failed to meet the high burden to establish harm that would arise out of the disclosure of the documents.

Merely alleging that the subpoenaed documents are "confidential" or "proprietary" is not a sufficient legal basis to quash the subpoena to the JVIS Entities and they have not alleged any harm to them. *Nucorp, Inc.*, 2012 U.S. Dist. LEXIS 187547, at *17, *19 ("Defendants' argument that the information sought is confidential does not give them standing to object, as 'confidentiality does not equate to privilege.'"); "[A] privacy interest is not a privilege, and provides no grounds for quashing a subpoena."); *Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus.*, No. 1:05-mc-107, 2005 U.S. Dist. LEXIS 30594, at *6 (W.D. Mich. Aug. 24, 2005) (holding that a non-party objecting to the subpoena bears the "burden of demonstrating" that a subpoena seeks production of confidential commercial information and that disclosure of such would subject it to harm and holding that the non-party had met this burden by submitting two detailed

---

LEXIS 51344, at *12-14 (N.D. Ohio June 25, 2008) (denying motion to quash subpoenas except with regard to information sought regarding subsidiaries). Notably, here, Synergen and Nartron <u>do not argue</u> that the subpoena will annoy, embarrass, oppress, or unduly burden <u>the JVIS Entities</u> as the subpoena recipient.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·39577 WOODWARD AVENUE, SUITE 300·BLOOMFIELD HILLS, MICHIGAN 48304

affidavits in support of its objection).  Here, similarly, Synergen and Nartron's attempt to quash the subpoenas to the JVIS Entities fails as a matter of law because they lack standing.

First, Synergen and Nartron fail to meet their very high burden of demonstrating that the requested tooling documents sought fall into a protected category, nor have they identified a privilege or right entitling them to standing to object to the subpoenas.  For that reason alone, Synergen and Nartron cannot object to the production of the tooling information.  Indeed, Synergen and Nartron have the burden to prove, via an affidavit or other evidence, that the tooling information is confidential and proprietary.  They provided no support, only attorney argument.

Second, even if the tooling documents requested are confidential and proprietary, Synergen and Nartron still must produce them.  As discussed in more detail below, Synergen and Nartron cannot seek over $700,000 as damages from FCA US related to tooling at the Reed City Facility, thereby placing the documents that would substantiate their claim for damages at issue, and at the same time claim a privilege as to those very same documents.  Such attempts have been repeatedly rejected by federal courts.  *See, e.g., Pogue v. Northwestern Mut. Life Ins. Co.*, 2016 U.S. Dist. LEXIS 70987, at *9 (W.D. Ky. May 31, 2016) (denying motion to quash subpoena issued to doctor because plaintiff "placed his disability status –

and consequently, his medical conditions – at issue in this lawsuit, and therefore, would be hard-pressed to argue that his medical records or other information related to his that is maintained by Dr. Lewis is privileged."); *Maday v. Pub. Libraries*, 480 F.3d 815, 821 n.2 (6th Cir. 2007) (holding that a "party waives [social worker-client communications] privilege when he or she raises a claim seeking to recover damages for emotional distress").

Third, Synergen and Nartron have not identified any substantiated risk of harm that would result from the disclosure of the information. Indeed, "general allegations that the information sought requires the disclosure of privileged or other protected material, and/or a trade secret or confidential research, development or commercial information" are not sufficient to demonstrate standing to seek to quash a subpoena absent specific or substantiated allegations. *McNaughton-McKay*, 2010 U.S. Dist. LEXIS 59275 at *5, *10 (finding that general allegations as to harm to a tier-one supplier to several OEMs from the disclosure of "confidential information" relating to its relationship with Chrysler was insufficient to quash the subpoena to Chrysler, because, among other things, the "allegation of harm is speculative and lacks specificity"). Because Synergen and Nartron have failed to meet the high burden of establishing a protected right or privilege as to the requested documents, and have failed to identify any harm to

16

either company as a result of disclosure, they lack standing to quash the subpoenas to the JVIS Entities.

**B.**   **The Information Sought Via the Subpoenas Is Highly Relevant to Establishing the Basis for Synergen's Alleged Damages Claim Against FCA US.**

Even if Synergen and Nartron could establish standing to object to the subpoena, their motion to quash must still be denied on the merits because the information sought (i) is directly relevant to the case, and (ii) FCA US requires the information because it goes directly to Synergen's damages, in particular over $700,000 in claimed damages included in Exhibit A to the Complaint.  (**Ex. A**, at Line Items 5, 6, 8 and 9.)

The information regarding Synergen's damages are directly relevant to the damages Synergen is seeking in this litigation.  As explained in detail above, Synergen's damages calculation, at line items 5, 6, 8, and 9, requests that FCA US reimburse it for over $700,000 in damages related to tooling. (**Ex. A**, Ex. A to the Complaint, Line Item 18.)  This is tooling existing at the same Reed City Facility where the WK parts were made. There is substantial concern about Nartron double dipping for this tooling, asking both the JVIS Entities and FCA US to pay for the exact same tooling—so much concern that the Macomb court issued three orders compelling Nartron to produce the information it so clearly was trying to hide. Thus, the information sought from the JVIS Entities is highly relevant to this lawsuit, and FCA US is entitled to the information requested in the subpoena to the

17

JVIS Entities.   Without this information, FCA US cannot defend against these tooling damages.

### C.   Additional Subpoenas to the JVIS Entities May be Necessary.

Synergen and Nartron have impeded FCA US's ability to defend this lawsuit every step of the way.  In addition to this motion to quash, Synergen and Nartron failed to respond to any discovery for months and months, refused to identify the contract under which Synergen is suing, refused to produce Nartron's profit and loss statements and other financial information, and most recently violated the May 12th stipulated order the parties' developed with the Special Discovery Master to resolve outstanding discovery disputes (literally producing nothing even after FCA US granted every request they had for an extension).  Now, in light of the very limited time remaining in discovery, these obstructionist tactics need to be stopped. Not only is the tooling information sought in the subpoena issued by FCA US to the JVIS Entities relevant for FCA US to defend against Synergen's damages claims here, as is evidence from the face of the Macomb-JVIS lawsuit orders, there is host of other damage information produced by Nartron in that JVIS lawsuit that is relevant to FCA US's defense of the damages here.  (*See* **Exhibits B, C, and D**) Indeed, FCA US likely will need to subpoena further information from the JVIS Entities precisely because Nartron's gamesmanship.  FCA US requests that this court take strong action to stop Synergen and Natron's dilatory discovery tactics.

18

## V.   CONCLUSION

For the foregoing reasons, FCA US requests that the Court issue an order finding the following:

    A.  Denying Synergen's and Nartron's Motion to Quash Subpoena to the JVIS Entities or and striking the Motion to Quash;

    B.  Awarding FCA US its attorneys' fees and costs incurred in responding to this frivolous Motion under Local Rules 7.1 and 11.1, and Federal Rule of Civil Procedure 11, or, at a minimum, issue an Order compelling full and complete compliance with Local Rule 7.1 by counsel for Synergen and Nartron in the future; and

    C.  Any other relief the Court deems just and proper.

<div style="margin-left:40%">

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: /s/ *Laura C. Baucus*
Laura C. Baucus (P56932)
Attorneys for FCA US LLC
39577 Woodward, Suite 300
(248) 203-0796
lbaucus@dykema.com

</div>

Dated:  May 25, 2017

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 39577 WOODWARD AVENUE, SUITE 300 • BLOOMFIELD HILLS, MICHIGAN 43304

## CERTIFICATE OF SERVICE

The undersigned deposes and states that on May 25, 2017 she electronically filed the foregoing with the Clerk of the Court using the electronic filing system which will send notification of such filing to counsel of record.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: /s/ Laura C. Baucus

Laura C. Baucus (P56932)
Attorneys for FCA US LLC
39577 Woodward, Suite 300
(248) 203-0796
lbaucus@dykema.com

4816-5542-7144.2
109228\000017

20